IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES DELESTER CRANDLE,     :
     Plaintiff,                   :
                                     :
vs.                           :     CIVIL ACTION 16-0550-CG-MU
                                     :
TA'ERIC SIMS, *et al*.,       :
     Defendants.          :
                                     :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.[1]  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R) and is now before the undersigned on Defendant's Motion for Summary Judgment (Doc. 35).  After careful review of the pleadings, and for the reasons set out below, it is recommended that the motion be **GRANTED,** in part, and **DENIED**, in part, and an evidentiary hearing be scheduled on the excessive force and failure to intervene claims asserted against Defendants Sims and Thompson.

In his complaint, Plaintiff James Crandle alleges constitutional violations occurred while he was incarcerated at Mobile County Metro Jail ("Mobile Metro Jail" or "the jail") awaiting trial for felony murder.[2]  (Doc. 1 at 6).  Crandle alleges

---

[1]     This is a consolidated action with Civil Action No. 16-0541-WS-MU filed on October 25, 2016, in this Court.  Review of the case actions reveals identical complaints in which the same persons are named as defendants and in which the same cause of action is described.  (Doc. 16).  Consequently, the actions were consolidated on April 3, 2017.  (Doc. 15).

[2]     Crandle also alleges that on July 29, 2016, at 7:30 p.m., he was assaulted by other inmates and taken to the hospital for his injuries.  (Doc. 1 at 4).  He claims,

that on September 6, 2016, at approximately 6:00 a.m., Officers Sims and Thompson entered his cell and used unnecessary force against him and left him bleeding with a bad headache. He further claims he had to wait 36 hours to see a doctor. Crandle is suing Correctional Officer Ta'Eric Sims for "assault and access[sic] force without cause", Correctional Officer La'Tre Thompson for "assault and accessory to access[sic] force without a reason", and Lieutenant Tunglia Hawkins for being an "accessory to assault and unnecessary force and leaving [him] in pain and suffering."[3] (Doc. 1 at 5-6). The Court interprets these allegations as claims of excessive force, failure to intervene, and delay of medical care, respectively.

---

"I had to lay down 8 hrs+ in pain with no bed on July 30, 2016 and still don't know none of the guys who assaulted me 7-29-16 because they wouldn't give me no names." (*Id*.).

"In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)). This requires that a plaintiff establish a causal connection between a defendant's actions, orders, customs, or policies and a deprivation of a constitutional right in order to state a claim upon which relief may be granted. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986); *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir.), *cert. denied*, 464 U.S. 932, 104 S. Ct. 335, 78 L. Ed. 2d 305 (1983). Crandle has failed to carry this burden as it relates to the above facts. Specifically, Crandle does not allege, in his complaint or any subsequent pleadings, a causal connection of this incident with respect to persons named as defendants in the complaint. Likewise, Crandle lists names of persons in the style of the complaint that are not causally connected to any constitutional violation or allegation within the complaint. As a result, only those claims connected to a defendant who is included in the description of Crandle's claims will be addressed in this report and recommendation.

[3] Crandle seeks monetary relief in the amount of $80,000.00 for his pain and suffering and requests that he be "kept away from all of [the] defendants." (Doc. 1 at 7).

The defendants have answered the suit, denying Crandle's allegations, and have submitted a special report in support their position. (Docs. 13, 14, 33, 34). The Court has converted these pleadings into a motion for summary judgment (doc. 35), to which Crandle has not responded. After a thorough review of the record, the court determines that this motion is now ripe for consideration.

**I.     Summary Judgment Standard**.

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The *Federal Rules of Civil Procedure* grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the "initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [they] believe[] demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (bracketed text added) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If the moving party does not have the burden of proof at trial, they may show that "there is an absence of evidence to support the nonmoving party's case." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (citations omitted). Alternatively, the moving party may support its "motion

for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* If the moving party meets this burden, the non-movant, as the party bearing the burden of proof at trial, must set forth specific facts, supported by citation to the evidence, to support the elements of the case at trial, and therefore, establish that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). "[A]ll reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant." *Citizens Trust Bank v. Lett*, 2015 U.S. Dist. LEXIS 90849, 2015 WL 4254561, at *1 (N.D.Ala. 2015). The Court is obligated to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as

a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Public Education for Bibb County*, 495 F. 3d 1306, 1313 (11th Cir. 2007).

## II.     Immunity Defenses.

In response to the allegations of this suit, Defendants have asserted all available immunity defenses. (Doc. 14 at 1).

To the extent Crandle's claims are against the correctional officers in their official capacities, Defendants Sims, Thompson and Hawkins are immune from suit, as the liability imposed, in reality, is on the entity the individuals represent versus the individuals themselves. *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985). The determination of the entity represented by the defendants for purposes of determining immunity from suit under 42 U.S.C. § 1983 is determined by reference to state law. *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990). Alabama law holds that a sheriff is a state, rather than a county, official for purposes of immunity from suit. *Parker v. Amerson*, 519 So.2d 442 (Ala. 1987); Ala. CONST. Art. V § 112 (listing county sheriffs as members of the state's executive department); *see also Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000) ("Alabama sheriffs operating jails are state officers protected by Eleventh Amendment immunity."). Similarly, "employees of the sheriff, deputies [and officers] in their official capacities, are [] entitled to Eleventh Amendment immunity." *Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007); *Lancaster v.*

*Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997) ("[J]ailers are state officials for the purpose of Eleventh Amendment immunity.").  There is no dispute that Defendants Sims, Thomson, and Hawkins, in their official capacities as county jail correctional officers, are arms of the state for Eleventh Amendment Immunity purposes and are therefore barred from suit for monetary damages in this action.

Defendants further assert the defense of qualified immunity as a bar from suit against them in their individual capacities.  Qualified immunity offers complete protection for individual government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009).  A party is eligible to claim qualified immunity if he was acting within the line and scope of his employment. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).  Based on Plaintiff's complaint allegations and the record, clearly the defendants were acting within their discretionary authority at the time the complaint arose. Thus, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Supreme Court has mandated a two-step analysis for resolving qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). First, a court must decide whether the facts that a plaintiff has alleged "show the [defendant's] conduct violated a constitutional right." *Id*. Second, the court must decide "whether the right was clearly established." *Id*. The determination of these elements may be conducted in any order. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Therefore, the Court will proceed with its analysis of whether or not Plaintiff has successfully alleged a constitutional violation.

## III. Discussion.

Plaintiff, James Delester Crandle, at the time relevant to the instant action, was a pretrial detainee at the Mobile County Metro Jail. Crandle does not articulate under which constitutional right he is suing; however, where the use of force is challenged by a pretrial detainee, rather than a convicted prisoner, "the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition against cruel and unusual punishment, governs our analysis." *Jacoby v. Mack*, 2018 U.S. App. LEXIS 31702, *12, __ F. App'x __ (11th Cir. 2018) (citation omitted); *see Kingsley v. Hendrickson,* __ U.S. __, 135 S. Ct. 2466, 2475, 192 L. Ed 2d 416 (2015) (noting "pretrial detainees (unlike convicted prisoners) cannot be punished at all . . .").

### A. Excessive Force.

The Supreme Court in *Kinsley* identified two separate state-of-mind questions to consider when evaluating excessive force claims of pretrial detainees.

"The first concerns the defendant's state of mind with respect to his physical acts – i.e., his state of mind with respect to the bringing about of certain physical consequences in the world." *Kingsley*, 135 S. Ct. at 2472. That is, a defendant must possess a purposeful, knowing, or reckless state of mind – negligent conduct will not suffice. In the current action, Defendants do not dispute that Defendant officers intentionally punched Crandle with closed fists. "The second question concerns the defendant's state of mind with respect to whether his use of force was 'excessive'." *Id*. at 2473. This requires showing "that the force . . . used against him was objectively unreasonable." *Id.* at 2473.

> [O]bjective reasonableness turns on the "facts and circumstances of each particular case." *Graham* v. *Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. See *ibid*. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell* v. *Wolfish*, 441 U.S. 520, 540, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *See*, *e.g., Graham*, *supra*, at 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

*Id.*. In evaluating the objective reasonableness of Defendants' actions, the court will assess the totality of the situation, including the factors provided in *Kingsley*.

As the moving party, Defendants bear the initial burden on summary judgment of "identifying those portions of 'the pleadings, . . . admissions on file, together with the affidavits, . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. In support of this motion for summary judgment, Defendants have produced personal affidavits and formal prison reports in support of this motion.

Officer Thompson states that on September 6, 2016, while conducting clean up in the Crandle's housing unit, he instructed Crandle to "back up from the cell door." (Doc. 34-3 at 1). Crandle refused the warning and, when Officer Thompson entered the cell, Crandle "became aggressive and combative and got into a fighting stance." (*Id*.). Officer Thompson states he "struck inmate Crandle twice with a closed hand to the face . . . and Crandle had to be physically taken to the bunk and then to the floor and placed in restraints." (*Id*.). According to Officer Thompson, Crandle received a small cut under his left eye and was taken to the Metro Jail Clinic where he was treated for the cut and released. (*Id*.).

Officer Sims declares, on September 6, 2016, at approximately 6:15 a.m., he was conducting morning clean-up in the 1005 I Wedge Cell 1022. (Doc. 34-1 at 1). Officer Sims affirms that he heard Officer Thompson order inmate Crandle to back up from his cell door three times and that he also ordered Crandle to back away once or twice; still, Crandle refused to obey any of the warnings. (*Id*.). The officers entered Crandle's cell, and "Crandle got into a fighting stance and became

aggressive and combative with Corrections Officer Thompson striking CO Thompson's hand." (*Id*.). Thompson then struck Crandle "and a short altercation occurred between Crandle, Thompson and [Sims]" before the two officers were able to take Crandle to the ground and restrain him with handcuffs. (*Id*.). Crandle received a small cut under his left eye during the incident and was taken to the Metro Jail clinic where he received treatment and was released. (*Id*.).

The Use of Force Reports prepared after the incident corroborate the defendants' version of the events and further provide that the incident occurred when Officers Thompson and Sims attempted to enter Crandle's cell to clean it and Crandle refused to move from the cell door to allow the officers entrance, because "Crandle was upset that the tv's didn't come at 0600 due to cleaning." (Doc. 34-1 at 5-6). Crandle stated to the officers "he was not moving." (Doc. 13-1 at 4). After Crandle ignored the officers' commands and the officers entered his cell, Crandle "became aggressive and combative", taking a "defensive stance", and the officers were afraid Crandle would "strike" them. (Doc. 34-1 at 4). Officer Thompson admits striking Crandle with a closed fist to the face. (Doc. 13-1 at 3).

The Officer Narrative Form, completed by Officer Sims, states that he and Officer Thompson entered Crandle's cell after Crandle refused three orders to move from the cell door to the back wall. (Doc. 13-1 at 7). Officer Sims reports that Crandle took a "defensive" stance, became "aggressive and combative", and Officer "Thompson and [Officer Sims] then struck [] Crandle with closed fist, to the head" before restraining him in handcuffs. (*Id*.). Officer Sims further states in the form that he struck Crandle one time to the forehead and one time to the left side

of his rib cage; Crandle was taken to the ground with an arm lock and placed in handcuffs.  (*Id*. at 7-8).

Correctional Lieutenant Hawkins, the shift commander at the time of the incident, responded to the scene pursuit to the "code 00" which was called by Officers Sims and Thompson.  (Doc. 34-2 at 1).  Hawkins also reviewed the use of force reports submitted by Officers Sims and Thompson and determined their actions were "justified" but counseled the officers "that alternative methods should be considered when dealing with an inmate such as James Crandle who exhibits suicidal tendencies", including "taser use, and/or securing the cell door and call for assistance from security." (*Id*. at 2; Doc. 34-1 at 4; Doc. 13-1 at 6).

The medical records indicate that Crandle was examined in the medical unit on September 6, 2016 at 11:00 p.m. with complaints of "left jaw pain and throat pain related to altercation earlier in the day."  (Doc. 23-2 at 5).  At the time of the exam, Crandle rated his pain (on a 1-10 scale) as a 10.  (Doc. 23-2 at 4).  Slight swelling was observed to Crandle's left jaw, but no swelling, bruising, or deformity was noted as to Crandle's throat, and Crandle's vital signs were charted as stable. (*Id*.).  Crandle was prescribed 400 mg of Ibuprofen, twice a day for 5 days, but refused it, and an x-ray of Crandle's jaw was ordered to be taken the next morning. (*Id*.).  The x-ray report of Crandle's left jaw was normal, indicating "no acute findings."  (Doc. 13-1 at 12).

Crandle was charged with three disciplinary infractions related to the incident: (1) acting insolent toward personnel, (2) failing to comply with officer's lawful order, and (3) attempting to intimidate personnel through threat; however,

Crandle was not sentenced or disciplined due to the charges. (Doc. 13-2 at 5). The Incident Report attached to the disciplinary charges recites the same facts presented above but adds that Crandle's refusal to comply with the orders to back up from the door were coupled with Crandle "stating, 'you're not coming in here.'" (*Id*. at 6). Officer Thompson claims in the incident report that he placed his hand on Crandle's shoulder to guide him away from the door and inmate Crandle became combative at that time. (*Id*.). While being examined by Nurse McDonald, Officer Thompson further claims that "Crandle began saying he was going to kill [Officer Thompson]." (*Id*.).

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant, Crandle, to show the existence of a genuine issue of material fact. *See Stabler v. Fla. Van Lines, Inc.*, Civ. A. No. 11-0103-WS-N, 2012 U.S. Dist. LEXIS 1637, 2012 WL 32660, at *5 (S.D. Ala. Jan. 6, 2012) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).

> [P]laintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery. We repeat, however, that the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial.

*Id*. Additionally, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id*. at 254 (citing *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158-159 (1970)). Crandle presents no additional evidence in attempt to overcome summary judgment; therefore, the Court will rely on Crandle's complaint allegations, specifically, that:

[O]n September-6-2016@6:00am officers C.O.L. Thompson, and C.O. Sims came into my cell and assaulted me, and used unnecessary force on me, all of this assaulting on me left me injury, and blood with bad headaches were I had to wait 36 hours to see a doctor who all cover up this assaulting on me Sept-6-2016. I also have witness who seen it also.

(Doc. 1 at 4).

The law states that "[s]trict adherence to rules and orders within a penal institution's walls are necessary for discipline, and even more importantly, for the safety and security of inmates, guards, and visitors alike," *West v. Sconyers*, 2010 U.S. Dist. LEXIS 123573, 2010 WL 4822084, *7 (M.D. Ala. 2010) (unpublished); *see also Danley v. Allen*, 540 F.3d 1298, (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) ("[P]rison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not required to do so where an inmate repeatedly fails to follow those orders."); *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."). Moreover, an inmate "is not at liberty to ignore or disobey, without consequence, the lawful orders of his custodians or the rules and regulations of a jail." *Id.* Consequently, any act of defiance permits the use of some force; however, "government officials may not use gratuitous force against a prisoner who has been already subdued or . . . incapacitated." *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002) (citations omitted).

"[W]ords alone[, however,] do not justify the excessive use of force against a pretrial detainee". *United States v. Cobb*, 905 F.3d 74 (4th Cir. 1990). Nor may

force, such as punching a suspect or detainee, be used when he is not resisting. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (8th Cir. 2008) ("punching a non-resisting criminal suspect for no apparent reason other than malice . . . is not protected by our constitution"); *Brown v. Harr*ington, No. 3:18-cv-2029 (KAD), 2019 U.S. Dist. LEXIS 2901, *4-5 (D. Conn. Jan. 7, 2019) (summary judgment denied where plaintiff alleged officer punched him in the face during a verbal altercation). Furthermore, "[i]t is not constitutionally permissible for officers to administer a beating as punishment for a prisoner's past misconduct [or resistance]." *Skritch*, 280 F.3d at 1302. Likewise, verbal defiance coupled with the failure to follow an order does not support the use of gratuitous force. *See Sawyer v. Asbury*, 537 F. App'x. 283 (4th Cir. 2013). A detainee's single strike at an officer may "not necessarily justify the deputy responding with two to three punches or necessitate that the other officers apply additional force" to the detainee. *Cortes v. Broward Cty., Fla*., No. 18-12461, 2018 U.S. App. LEXIS 35366, *14 (11th Cir. Dec. 18, 2018).

In *Sawyer v. Asbury*, a factually similar case, the plaintiff failed to comply with an officer's order to stand but "did not attempt any violent, unruly, or evasive act" and did not pose an immediate threat to the officer, and the Fourth Circuit held that "[a] detainee's refusal to comply with an officer's lawful order, without more, is not a license to 'take the gloves off.'" *Sawyer*, 537 F. App'x at 294-95 *Id.* at 294. Summary judgment was also denied by our sister court, where the defendant officer punched the plaintiff in the face for being "disruptive", hitting the officer with a shoe that was "kicked off" during the intake process, and for moving toward the

officer "in a combative manner". *Richardson v. Johnson*, 4:08-CV-91 (CDL), 2010 U.S. Dist. LEXIS 32174 (M.D. Ga., June 23, 2010). In contrast, fist strikes, kicks, or taser usage may be reasonable uses of force against an individual actively resisting an officer. *See Baker v. Clements*, No. 18-12724, 2019 U.S. App. LEXIS 3411, *7, __ F. App'x __ (11th Cir., Feb. 4, 2019) (fist strike was objectively reasonable where plaintiff "attempted to evade arrest by flight and had refused multiple orders to get on the ground, to stop resisting, and to give his hands to the officers."); *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1355 (11th Cir. 2015) (use of force, including striking, kicking, and tasing, was reasonable where the plaintiff "refus[ed] to surrender his hands to be cuffed despite the application of escalating force and repeated use of a taser"); *Escarcega v. Jordan*, 701 F. App'x 338, 342 (7th Cir. 2017) ("[T]he evidence shows that Escarcega was resisting arrest at all times when force was used, and using force, such as punches, to gain control of a non-compliant suspect is not clearly excessive." (citation omitted)).

The record evidence is unclear as to material facts necessary to determine if the force administered was objectively reasonable. On one end of the spectrum, Crandle alleges he did nothing to warrant the force used against him. This position is supported by the record with Crandle's consistent statements in the prison records prior to the filing of this action, by the lack of disciplinary findings against him following the incident, and the shift officer's counseling to the officers regarding the usage of lesser force in similar situations. The record further supports that

there was no urgent need to enter Crandle's cell and that no subsequent orders (i.e., to cuff up) were given once in the cell to temper the need for force to be used.

On the other end of the spectrum, Defendants submit that Crandle disobeyed multiple orders, acted aggressively and combatively, and that they felt threatened that Crandle would strike them. The record, however, is inconclusive or vague as to whether Crandle ever struck one of the officers, whether one or both officers hit Crandle, the degree of Crandle's verbal defiance, whether threatening language was used by Crandle, and the extent of Crandle's injury.[4]

The current record contains material factual disputes and lacks sufficient factual details to determine whether Defendants used excessive force against Crandle on September 6, 2016. The law is clear, at the summary judgment stage, it is not the function of the reviewing court to weigh the evidence and determine the truth of the matter; rather, it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 252. Where a fact is disputed, the nonmovant's version of the fact is presumed to be true. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1139-40 (11th Cir. 2007) (citing *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986) ("[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied.")); *Kingsland v. City of Miami*, 382 F.3d

---

[4]     The extent of a plaintiff's injury does not preclude his ability to establish a claim. *See Wilkins*, 559 U.S. at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without injury"); *see also Golston v. Hetzel*, 2015 U.S. Dist. LEXIS 21766, 2015 WL 758474, at *23 (M.D. Ala Feb. 23, 2014) (allegations of unprovoked attack without serious injury are sufficient to survive summary judgment where Plaintiff alleged being punched four times).

1220, 1227 (11th Cir. 2004), *cert. denied, De Armas v. Kingsland*, 543 U.S. 919, 125 S. Ct. 80, 160 L. Ed. 2d 203 ("The plaintiff's word is merely countered by the defendants' testimony. Given the standard of review at the summary judgment state, we must accept [Plaintiff's] version of the facts as true.) (citing *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 n.9 (11th Cir. 2002)). Accordingly, the Defendants have failed to carry their burden of showing the absence of evidence to support Crandle's claims and summary judgment must be **DENIED** at this time. Additionally, it is recommended that an evidentiary hearing be scheduled to resolve the outstanding factual discrepancies of the record.

### B. Failure to Intervene.

In his complaint, Crandle also raises a claim for failure to intervene against Defendant Officer Thompson. Review of the defendants' special report reveals inconsistent statements regarding whether or not one or both officers participated in the use of force, specifically, striking Crandle with a closed fist. Consequently, summary judgment must be **DENIED** on this claim, at this time, and the court will carry the claim along with the excessive force claim.

### C. Denial or Delay of Medical Care.

Lastly, Plaintiff Crandle alleges in his complaint that he was denied or delayed medical care. Like his excessive force claim, Crandle's medical care claim is analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, but the standard is similar requiring a plaintiff to establish that there was "a substantial risk of serious harm," that Defendants were subjectively deliberately indifferent to that risk, and causation. *Hale v. Tallapoosa*

*Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995); *see also Melton V. Abston,* 841 F.3d 1207, 1220 (11th Cir. 2016) (courts must give Fourteenth Amendment claims of deliberate indifference to serious medical needs of pretrial detainee the same scrutiny as if brought pursuant to the Eighth Amendment).

> For medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted). A medical need may be considered serious if a delay in treating it makes it worse. *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008). To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and internal quotations omitted).

*Palazon v. Sec'y for the Dep't of Corr.*, 361 F. App'x. 88, 89 (11th Cir. 2010).

In the current action, it is difficult to discern the exact injury sustained by Crandle. Defendants maintain that Crandle received a cut to his left eye; Crandle alleges he was left bleeding with headaches and in pain, and the medical records, do not mention any cut, laceration, or bleeding and indicate only jaw swelling, which was severe enough to order an x-ray. Plaintiff claims that he had to wait 36 hours to see a doctor, whereas the Defendants contend that Crandle was taken to the Mobile Metro Jail Clinic immediately following the incident.[5] The medical records, however, reflect that Crandle was examined approximately 17 hours after the incident, based on a time stamp of 11:00 p.m., that he rated his pain as

---

[5] Defendants' affidavits state that Crandle was escorted to the Mobile Metro Jail clinic and the supporting prison records created within minutes of the incident also detail that Crandle was taken to the clinic for receipt of medical treatment.

extremely severe (yet refused the pain medication prescribed), and that an x-ray was conducted the following day.

Based on the record before it, the court concludes Crandle has failed to demonstrate an objectively serious medical need either directly following the incident subject of this suit or by virtue of the delay between the incident and receipt of medical attention at the jail clinic.  In determining the seriousness of an injury, the Eleventh Circuit has explained that:

> We define a "'serious medical need' as one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." Id. "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).  "In either of these situations, the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)).  We have explained that a successful [constitutional claim for "immediate or emergency medical attention" requires "medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute" a constitutional violation. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).  An arrestee "who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id*. at 1188; see also *Surber v. Dixie County Jail*, (No. 06-11898, Nov. 17, 2006, 11th Cir.) (unpublished opinion).

*Fernandez v. Metro Dade Police Dep't*, 397 F. App'x 507, 511-512 (11th Cir. 2010).

In evaluating the seriousness of Crandle's medical need, the cases below lend guidance.

In *Fernandez v. Metro Dade Police Dep't,* 397 F. App'x 507 (11th Cir. 2010), the Eleventh Circuit reversed the district court's finding of a serious medical need where the arrestee suffered a bloody nose and mouth, which lasted over five minutes, facial bruising, pain, disorientation, and blood clogs in his nose. The court determined the injuries did not create an objectively serious medical need either at the time of the arrest or at the time he finally received medical attention, where the only treatment necessary was aspirin, which was requested by the arrestee for a headache.

In *Martin v. Gentile*, 849 F.2d 863 (4th Cir. 1998), the plaintiff suffered a cut over one eye, a quarter-inch piece of glass embedded in his palm, and bruises on his shoulders and elbows. The court found the cut over the plaintiff's eye was small and had stopped bleeding by the time he appeared at arraignment (approximately four hours later), and the sliver of glass in his palm was undoubtedly uncomfortable but was not a serious injury. Once seen in the emergency room, the plaintiff's injuries were described as minor and required neither stitches nor pain medication. Without evidence that the delay in treatment exacerbated the injuries, the court found there was no serious medical need shown and no constitutional violation.

In *McKnight v. Garriott*, No.: 3:15-cv-159-J-39JRK, 2018 U.S. Dist. LEXIS 195489 (M.D. Fla. Nov. 16, 2018), the plaintiff alleges he was beaten and hogtied while handcuffed and suffered bleeding from his face, wrists and shoulder, swelling to the left side of his face, a significant abrasion to his head, as well as head, torso and back pain, and severe headaches. The plaintiff was left hogtied and bleeding

for an hour before receiving medical attention.  When examined, the blood and dirt were cleaned from the plaintiff's wounds, Neosporin was applied, his finger was bandaged, and an ice pack was given.  Plaintiff's wounds healed without sutures or surgical intervention.  The court concluded that the plaintiff failed to demonstrate an objectively serious medical need because the plaintiff's injuries were minor, did not require treatment from the hospital, and he was able to be released to the institution for confinement.  The court further concluded that a reasonable officer in the defendants' shoes would not have recognized a serious medical need requiring immediate attention and qualified immunity was granted.

Similarly, Crandle has not claimed that he bled for any specific (much less lengthy) time, that he suffered complications from blood loss, nor has he articulated the size of the cut(s) sustained.  He has not provided any medical evidence that his injuries were serious enough to require medical attention earlier than he received it.  And, although his injuries likely did cause pain and discomfort, there is no available evidence to indicate that the delay in treatment exacerbated his injuries to the point of risking his health or safety.  Instead, the medical evidence produced shows that Crandle did not need stitches and refused the offered pain medication prescribed; thus, it would not have been apparent to a reasonable officer at the time of the incident that Crandle was suffering from a life threatening or serious injury where a delay would detrimentally exacerbate the medical problem.  *Hill*, 40 F.3d 1176, 1187-89; *but cf., Aldridge v. Montgomery*, 753 F.2d 970 (11th Cir. 1985) (serious medical need was found where plaintiff suffered one and half inch cut over right eye and continued to bleed for two hours (forming a

pool of blood on the floor the size of two handfuls) before receiving medical treatment, where he received six stitches, ice packs, and aspirin, which defendants failed to provide).

The undersigned finds Crandle has failed to carry his burden of establishing that he suffered an objectively serious medical need and, therefore, a constitutional violation. As such, Defendants are granted qualified immunity as to Crandle's delay of medical care claim, and it is further recommended that summary judgment be **GRANTED** in favor of the Defendants on this claim.

## IV. Conclusion.

Plaintiff James Delester Crandle has failed to show a Fourteenth Amendment constitutional violation on the part of Defendants Ta'Eric Sims, La'Tre Thompson, and Lieutenant Tunglia Hawkins for deliberate indifference to his medical treatment. Based on the foregoing, the undersigned determines that Defendants are immune from suit on this claim and summary judgment should be **GRANTED** in their favor on this claim.

Additionally, the undersigned concludes there remain issues of material fact regarding the Fourteenth Amendment constitutional claim of excessive force and failure to intervene. Accordingly, it is recommended that Defendants Ta'Eric Sims and La'Tre Thompson are not entitled to judgment as a matter of law on this claim and cause of action interposed by Plaintiff. Therefore, it is recommended that Defendants', Sims and Thompson, motion for summary judgment, as to the excessive force and failure to intervene claim, be **DENIED** at this time.

It is further recommended that an evidentiary hearing be scheduled to address this claim.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that

merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this the 22nd day of February, 2019.

                         /s/ P. Bradley Murray
                         **UNITED STATES MAGISTRATE JUDGE**